**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
In re                                                                : Chapter 11
                                                                     :
BICOM NY, LLC, et al.,                                               : Case No. 17-11906 (MEW)
                                                                     :
                                    Debtors.                         : (Confirmed Cases)
------------------------------------------------------------------------x
CRAIG R. JALBERT, in his capacity as the                             :
Liquidation Trustee,                                                 :
                                                                     :
                                    Plaintiff,                       :
                                                                     :
      v.                                                             : Adv. Pro. No. 19-1311
                                                                     :
IRINA GRYAZNOVA,                                                     :
                                                                     :
                                    Defendant.                       :
------------------------------------------------------------------------x

### DECISION GRANTING SUMMARY JUDGMENT IN
### FAVOR OF DEFENDANT IRINA GRYAZNOVA
### AND DISSOLVING TEMPORARY RESTRAINING ORDER

On August 18, 2020, at the conclusion of a hearing (the "Hearing"), the Court ruled on several motions and issues before it. The Court denied the motion filed by Craig R. Jalbert, the Liquidating Trustee, for summary judgment against defendant Irina Gryaznova, and denied Ms. Gryaznova's motion to dismiss based on an alleged lack of personal jurisdiction. However, the Court deferred ruling on Ms. Gryaznova's motion seeking summary judgment in her favor pending further briefing by the parties on the issue of whether Ms. Gryaznova was an "initial transferee" under section 550 of the Bankruptcy Code. The Court also allowed a restraining order to remain in effect as to Ms. Gryaznova pending a decision on the "initial transferee" issue. An order reflecting the Court's rulings was entered on August 24, 2020 (ECF No. 49).

Most of the material facts concerning the transfers of the funds at issue are not in dispute, though there are some disputes (as noted below) about the background to the transactions and disputes as to how to characterize the facts. More specifically:

1. Ms. Gryaznova and Alexander Boyko are citizens of the Russian Federation who visited a friend, Veniamin Nilva, in Florida in 2008. Ms. Gryaznova and Mr. Boyko decided that they wished to purchase a condominium in the same complex where Mr. Nilva lived, and that they would like to obtain permanent residency in the United States.

2. Ms. Gryaznova sought to avail herself of the EB-5 program under which individuals could qualify for permanent residence by investing in a U.S. company as a way to create jobs for U.S. citizens. The process required her to maintain a U.S. bank account with a minimum balance of $10,000.

3. Ms. Gryaznova contends that a social security number was needed to open a bank account. She contends that Mr. Nilva offered to open a bank account jointly with her (the Nilva-Gryaznova Account), that only Ms. Gryaznova's money was to be kept in the account, and that Mr. Nilva was only a "nominal" account holder.

- The Trustee disputes the contention that a social security number was needed to open a bank account and disputes the legal characterization of Mr. Nilva as a "nominal" account holder. However, the Trustee has not contested the assertion that only Ms. Gryaznova's money was to be kept in the account. *See* "The Trustee's Response to Defendant Irina Gryaznova's Statement of Undisputed Material Facts," August 12, 2020, ¶ 5 (ECF No. 47).

4. The Nilva-Gryaznova Account was set up using Mr. Nilva's Florida address to receive and hold the monthly bank statements. There is no dispute that Ms. Gryaznova was

aware of the existence of the joint account and that she had signatory authority with respect to the account.

5. Mr. Nilva was a managing member of several automobile dealerships and holdings companies including BICOM NY, LLC ("BICOM"), one of the debtors in these cases, and a non-debtor named Kings Automotive Holding LLC ("Kings Automotive").

6. BICOM and Kings Automotive each had bank accounts with JPMorgan Chase ("**Chase**"). BICOM also maintained a "floorplan financing" plan with Chase, which required BICOM to report all transfers made to ensure they were ordinary course of business transactions.

7. BICOM breached its agreement with Chase by opening a separate bank account at Wells Fargo. The Wells Fargo account permitted the owners of BICOM to make transfers of BICOM funds without the knowledge of Chase even if such transfers were not being made in the ordinary course of business.

8. In 2016 the owners of BICOM wished to transfer $1 million from BICOM to Kings Automotive. However, they knew that Chase would not permit such a transfer.

9. In order to make a transfer from BICOM to Kings Automotive, while disguising the source of the funds, Mr. Nilva caused a check to be drawn on BICOM's Wells Fargo account in the amount of $1 million. The check was made payable to Ms. Gryaznova. Without Ms. Gryaznova's knowledge or consent, Mr. Nilva endorsed the check using his own signature and deposited it in the joint Nilva-Gryaznova account. "Simultaneously," Mr. Nilva also wrote a check against the joint account for the same amount ($1 million), which he made payable to Kings Automotive and which he deposited in a Kings Automotive bank account. The two checks were dated the same day (June 26, 2016). *Id.* ¶ 12.

During the Hearing the Trustee's counsel confirmed that the Trustee does not dispute the contentions that (a) Ms. Gryaznova did not actually use any of the transferred funds, (b) Ms. Gryaznova did not know about the transfers until after this litigation was filed, (c) Mr. Nilva's intent was to make a transfer to Kings Automotive, and (d) the joint account was used by Mr. Nilva solely as a device to deceive Chase as to the origin of the funds that were being transferred by BICOM to Kings Automotive.

The parties have argued that the decision by the Second Circuit Court of Appeals in *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 130 F.3d 52 (2d Cir. 1997), is controlling under the foregoing facts, though they reach opposite conclusions as to what result the *Finley Kumble* decision mandates. The Trustee argues that Ms. Gryaznova had legal "dominion or control" over the funds because she was a joint account owner and that *Finley Kumble* requires that Ms. Gryaznova be held strictly liable as an "initial transferee." 130 F.3d at 57. Ms. Gryaznova argues that a "recipient" of funds is not necessarily a "transferee," *id*., and that under *Finley Kumble* her account was merely a conduit for the transfer of funds from BICOM to Kings Automotive.

The Trustee has cited authorities that speak generally of the legal rights of joint account owners. *See, e.g*., *In re Strauss*, 2015 WL 1221380, at *8 (Bankr. D. Colo. Mar. 16, 2015)). The Trustee has also cited decisions in which courts have rejected (on factual grounds) contentions by defendants that they lacked actual "control" over funds in joint accounts. *See, e.g., In re Big Apple Volkswagen, LLC*, 2016 WL 1069303, at *12 (Bankr. S.D.N.Y. Mar. 17, 2016), and *In re Polichuk*, 506 B.R. 405, 451 (Bankr. E.D. Pa. 2014)). At the Hearing, however, the Court brought three additional decisions to the attention of the parties, none of which had been addressed in the parties' prior submissions:

4

- In *In re Chase & Sanborn Corp.*, 813 F.2d 1177 (11th Cir. 1987), a defunct corporation was reopened just to launder funds. The corporation's sole owner opened a bank account in the company's name, deposited funds, then transferred the money to a third party and closed the account. The Court held that a trustee of the corporation could not recover the funds that had been transferred from the bank account because the debtor corporation did not have sufficient control over the funds to warrant a finding that the funds were the corporation's property. That was true even though the funds had been deposited in an account of which the corporation was the legal owner. The court found the evidence of the sole owner's control of the transfer "overwhelming" and the debtor's connection to the funds "tangential."

- In *Walsh v. Townsquare Assocs. (In re Montross)*, 209 B.R. 943 (9th Cir. 1997), Montross laundered funds through Townsquare bank accounts over which Montross had the sole signature authority. He concealed the scheme from others, and Townsquare never used the money or knew of the funds. The Court held that under the circumstances of that case Townsquare was not a "transferee," holding that Townsquare never had dominion and control and only had bare legal possession of the funds.

- In *In re Reeves*, 65 F.3d 670 (8th Cir. 1995), the debtor fraudulently put $65,000 into the account of Reeves Farms, Inc. and then transferred that money to another account of another entity. The bankruptcy court held that Reeves Farms, Inc. was liable as an initial transferee, but the Court of Appeals reversed. The Court of Appeals noted that there was no indication that Reeves Farms, Inc. had received any benefit, and held that the debtor's use of the Reeves Farms account did not make Reeves Farms an initial transferee. Instead, Reeves Farms was a conduit under the circumstances.

The Court directed the parties to make further submissions to address these authorities and any other supplemental authorities on the same points. Those submissions have been made, and the Court has reviewed them.

The Trustee continues to argue that Ms. Gryaznova should be held strictly liable for the transfer at issue. It is true, as the Trustee suggests, that *if* a person is an initial transferee then there is strict liability for transfers. *See In re Red Dot Scenic, Inc.*, 351 F.3d 57, 58 (2d Cir. 2003) ("If the recipient of debtor funds was the initial transferee, the bankruptcy code imposes strict liability and the bankruptcy trustee may recover the funds.") However, it is emphatically not the case that every "recipient" of funds is automatically liable as an "initial transferee." *See Finley Kumble*, 130 F.3d at 56 ("The statutory term is 'transferee' – not 'recipient' – and is not

5

self-defining.") The Trustee is trying to apply strict liability standards in deciding whether someone is a transferee in the first place, but that is precisely what the *Finley Kumble* decision forbids. *Id.* at 56 (rejecting the contention that "the owner of the first pair of hands to touch the property is the initial transferee," and agreeing with a prior decision from the Seventh Circuit holding that "a more functional" rule must be applied, *citing Bonded Fin. Servs. v. European Am. Bank*, 838 F.2d 890, 894 (7th Cir.1988)).

In *Finley Kumble*, an insurance broker received payments and deposited them into the broker's own bank account. There was no question that the insurance broker had received the funds and that the insurance broker owned the account into which the funds were deposited. *See* 130 F.3d at 55. However, the only reason the broker received the payments was so that it could make payments to an insurance company, and the record showed that the broker had paid all of the funds to the insurance company within 5 to 14 days after the broker had received them. *Id.* The Court of Appeals agreed with the district court's holding that the broker's receipt of the funds did not automatically make it a "transferee," and held that the actual "transferee" is "the one to whom the funds ultimately should go," which in that case was the insurance company. *Id*. at 57. The broker in *Finley Kumble* had just performed a service, and in that context the Court held that the broker should not be regarded as a transferee. *Id*. at 58-59.

The Trustee argues that under *Finley Kumble* any person who legally has "dominion and control" over an account into which funds are deposited is automatically to be regarded as a transferee. In fact, the Court held in *Finley Kumble* that "dominion and control" were "minimum" requirements before someone could be treated as a transferee, but it did not hold that they were always sufficient by themselves. *Id*. at 57. More importantly, the *Finley Kumble* decision does not support the Trustee's contention that a party's bare legal ownership of a bank

6

account is sufficient by itself to make the party a "transferee." The broker in *Finley Kumble* owned the bank account into which the funds were deposited and exercised actual control over the movement of the funds. However, the broker also had agreed to transfer the funds to another party. Under the circumstances of that case the broker was functionally just a conduit for the intended transfer from the client to an insurance company. The broker's legal ownership and control of the relevant bank account were not enough to make the broker liable as an initial transferee.

The problem with the Trustee's approach in this case is that it pushes legal fictions to extremes that make no sense and that are inconsistent with the teachings of the *Finley Kumble* decision. The whole point of having a "dominion and control" test is to ensure that treating someone as a "transferee" has some grounding in the realities of the underlying transaction. The Trustee asserts that Ms. Gryaznova's ownership of the account theoretically gave her unfettered control over the funds, but in the real world she had no such control at all. Ms. Gryaznova had no knowledge of the deposit, and the money was long gone before Ms. Gryaznova knew about it. Ms. Gryaznova actually had far less actual "control" over the use of the funds at issue than the broker had in the *Finley Kumble* case.

Furthermore, the Trustee's argument about Ms. Gryaznova's alleged theoretical discretion over the funds ignores the check that Mr. Nilva "simultaneously" wrote to Kings Automotive. The issuance of that check created a legal obligation that had to be honored and denied Gryaznova the right to put the money to her own purposes. If the broker's agreement to transfer funds to an insurance company created a legal obligation that was sufficient to negate the broker's alleged "dominion and control" over funds that the broker received in the *Finley Kumble* case, then so too the simultaneous check written by Mr. Nilva to Kings Automotive

7

created a legal obligation that had to be honored and that negated any "dominion and control" over the deposit that Ms. Gryaznova allegedly had by virtue of her rights as a joint account owner.

Under the admitted facts Mr. Nilva simultaneously deposited the BICOM check in the joint account and issued a check from that account to Kings Automotive. The two checks directly offset each other. Any benefit allegedly provided by the deposit was coupled with an equal and simultaneous liability. On a net basis the transaction did not actually made any funds available. No real-world transfer of funds to Ms. Gryaznova was intended, and none was accomplished. Nilva used the joint account solely to facilitate a transfer from BICOM to Kings Automotive. Ms. Gryaznova did not endorse, participate in or know about this use of her account – which was supposed to be used only for her own funds – and she received no benefit from it.

The admitted facts distinguish this case from the decisions cited by the Trustee. In *In re Big Apple Volkswagen, LLC*, Adv. Proc. No. 11-2251 (JLG), 2016 WL 1069303, at *12 (Bankr. S.D.N.Y. Mar. 17, 2016), for example, a defendant disputed her liability as an initial transferee for transfers made by a company owned by one of her sons to an account in her name. She alleged that another son controlled that bank account and that she had no knowledge of the transfers made to the account. However, the Court held that the defendant had not proffered any evidence in support of her allegations. *Id*. Further, the transfers of the funds to the bank account were not for the benefit of a third-party, they were for account holder's benefit. *Id*. at 16. Under these circumstances, the court concluded that the unsupported statement that another son controlled the account were insufficient to insulate the defendant from liability as an initial transferee. *Id*.

8

In *Finkel v. Polichuk (In re Polichuk)*, 506 B.R. 405 (Bankr. E.D. Pa 2014), a debtor wrote a check in the name of his sister (Larisa); Larisa then opened a joint bank account with the debtor's wife (Marina), and deposited the check in the joint account. *Id.* at 449. Larisa moved for summary judgment, arguing that she did not have dominion and control over the funds even though the check had been written to her. The court held that Larisa had presented "no evidence" to support this contention, and denied summary judgment. *Id.* at 451.

In *Anstine v. Barclays Bank Del. (In re Strauss)*, Adv. Proc. No. 12-01801, 2015 Bankr. LEXIS 822 (Bankr. D. Colo. Mar. 16, 2015), a debtor deposited funds into a joint account with his wife and the funds were used to pay credit cards belonging to both the wife and the husband. A trustee sued the bank that received the credit card payments. The bank argued in response that the wife (not the bank) was the 'initial transferee" of funds that the husband had deposited in the joint account, and that the wife's and husband's credit card debts constituted "reasonably equivalent value" for the funds that the bank later received from the couple through the joint account. The trustee argued that the wife was not a "transferee," and that all of the funds in the joint account should be treated as funds belonging to the husband because it was the husband who had earned the money. *Id.* at *23. There was no dispute, however, that the wife had control over the account and actual access to the funds, and that the funds had been used to pay her credit card debts. Under those circumstances the Court of Appeals agreed with the bank's contention that the wife (not the bank) was an initial transferee of funds from the husband, and held that there was "reasonably equivalent value" for the funds the bank had received from the two owners of the joint account.

None of the foregoing decisions supports the Trustee's arguments in this case. They all involve situations in which, for factual reasons, courts rejected contentions that a joint account

9

holder was not a transferee. They do not support the contention that a joint account holder should be deemed liable as a transferee under the unusual circumstances present in this case.

The Trustee has also relied on decisions involving parties who knowingly act as transferees of funds for the purpose of hiding the funds from creditors, and who then attempt to avoid liability by contending that they lacked "control" of the funds because they merely followed instructions they received from other people. In *In re Hurtado*, 342 F.3d 528 (6th Cir. 2003), for example, a mother knowingly deposited funds for her son and daughter-in-law into a joint account held by the mother and her spouse. *Id*. at 530. The money was in the joint account for many months. The mother and her spouse claimed that they were not really "transferees" because the funds were only used at the direction of and for the benefit of the children. *Id.* However, the facts showed that the mother knowingly accepted the funds for the purpose of concealing them from creditors. *Id.* at 531. Under these circumstances the mother and her spouse plainly were "transferees" of fraudulently transferred property. The mere fact that they were motivated by a desire to help their children, and chose to accept instructions from the children, did not alter the fact that they had agreed to be the transferees of funds in transactions that were meant to hinder, delay or defraud creditors. They were voluntary transferees in transactions that were intentionally fraudulent, and this was true regardless of whether the mother and her spouse chose to follow the children's instructions or to use the funds otherwise.

Similar patterns can be found in other decisions cited by the Trustee. *See, e.g., Richardson v. United States, IRS (In re Anton Noll, Inc.)*, 277 B.R. 875, 881-82 (1st Cir. 2002) (corporate owner transferred debtor's funds to his own account; the owner was the transferee under those facts, and the mere fact that the owner chose to use the money to pay the owner's debts to the IRS did not change that conclusion); *Helms v. Roti (In re Roti)*, 271 B.R. 281, 296

(Bankr. N.D. Ill. 2002) (father transferred funds to daughters to keep the funds away from creditors; the daughters were "transferees" notwithstanding their contention that they only used the money at their father's instructions); *718 Arch St. Assocs., Ltd. v. Blatstein (In re Blatstein)*, 260 B.R. 698, 718 (E.D. Pa. 2001) (husband transferred money to his wife to prevent creditors from having access to the money; wife was a "transferee" notwithstanding her allegation that she only actually used the money as her husband directed). Transfers plainly were made in the foregoing cases. The mere fact that the transferees allegedly agreed or chose to follow instructions from other people did not negate the fact that they voluntarily agreed to be the transferees of funds and that they did so for the express purpose of defrauding creditors. No similar facts are present here. Ms. Gryaznova did not authorize or participate in Mr. Nilva's use of the account, she exercised no actual authority over the funds, and she received no benefit.

The real transfer that was accomplished in *Finley Kumble* was a transfer from a client to an insurance company. In this case, the "transfer" that BICOM intended to make, and did make, was a transfer to Kings Automotive, not to Ms. Gryaznova. The joint account was just a brief waystation for the funds, not a destination. Ms. Gryaznova may have had legal rights with respect to the joint account in the abstract, but she had neither the practical opportunity nor (in light of the simultaneous check to Kings Automotive) the legal right to use the relevant funds. She was not an intended or actual "transferee" of these funds in any realistic way.

The Trustee also argues that Ms. Gryaznova "made her own bed" by agreeing to have the joint account and that she now should bear the consequences, including strict liability as a deemed "transferee." But Ms. Gryaznova did nothing inherently wrong, illegal or tortious by having a joint bank account with Mr. Nilva. She admittedly did nothing to prompt Mr. Nilva's actions, did not join in them and did not actually benefit from them. The account was only

11

supposed to be used for Ms. Gryaznova's funds; Mr. Nilva's actions (for his own nefarious purposes) were contrary to that agreement. Strict liability is appropriate as a way of redressing wrongs, not as a way of victimizing innocent parties. The notion that Mr. Gryaznova did something that warrants strict liability, and that she should be obligated to pay $1 million of her own funds because Mr. Nilva used her $10,000 account in the manner described above, is without merit.

## Conclusion

For the foregoing reasons, the motion by Irina Gryaznova for summary judgment in her favor will be granted, the adversary proceeding will be dismissed with prejudice, and the temporary restraining order will be lifted insofar as it relates to Ms. Gryaznova. A separate Order will be issued to this effect.

Dated: New York, New York
      September 21, 2020

                                          **s/Michael E. Wiles**
                                          UNITED STATES BANKRUPTCY JUDGE